Robert L. WHITTAKER, Director
of Special Fund, Appellant,

v.

Michael ROBINSON; Cliffco Enterprises
Richard H. Campbell, Jr., Administrative
Law Judge; and Workers' Compensation Board, Appellees.

Cliffco Enterprises, Appellant,

v.

Michael Robinson; Special Fund; Richard
H. Campbell, Jr., Administrative Law
Judge; and Workers' Compensation
Board, Appellees.

Nos. 98–SC–309–WC, 98–SC–310–WC.

Supreme Court of Kentucky.

Oct. 15, 1998.

Ordered Published by Supreme Court
Dec. 17, 1998.

Joel D. Zakem, Labor Cabinet—Special Fund, Louisville, for Whittaker and Special Fund.

David H. Neeley, Neeley & Reynolds Law Offices, P.S.C., Prestonsburg, for Cliffco Enterprises.

Thomas G. Polites, Wilson, Stanley, Bowling & Costanzo, Lexington, for Appellee Robinson.

OPINION OF THE COURT

This workers' compensation appeal concerns the proper definition of the word "wage" with regard to determining whether the claimant returned to work at a wage

which was greater than his pre-injury wage for the purposes of applying KRS 342.730(1)(b).

Claimant was employed by the defendant-employer as a mechanic or repairman in underground coal mining from February 22, 1995 until April 7, 1995, when he sustained a work-related injury to his left knee. The parties stipulated to an average weekly wage of $480.00, and the defendant-employer does not dispute claimant's testimony that his hourly wage was $12.00. Claimant testified that he worked from 48 to 50 hours per week.

Claimant testified that after corrective surgery and a period of unemployment, he obtained employment repairing equipment for a surface mining company, a position which was compatible with his work restrictions. He testified that he worked from 50 to 60 hours per week at an hourly wage of $10.00. Approximately two weeks after beginning the subsequent employment, claimant sustained another work-related injury. He was receiving temporary, total disability (TTD) benefits for that injury from the subsequent employer at the time of the hearing on this claim.

The Administrative Law Judge (ALJ) who considered the claim determined that claimant had sustained a 2% functional impairment and a 30% occupational disability as a result of the April 7, 1995, injury. Noting that claimant's average weekly wage was greater after the injury than it was before the injury, the ALJ concluded that claimant was limited to a recovery of 4% permanent, partial disability, an amount equal to twice his functional impairment rating. Although stating that this limitation seemed unjust on these facts, the ALJ concluded that it was required by KRS 342.730(1)(b) as amended effective April 4, 1994. *Acts,* 1994, Ch. 181, § 25.

Claimant appealed the ALJ's application of KRS 342.730(1)(b) and asserted that KRS 342.730(1)(c) should apply to this claim. He argued that although the additional hours of work in his post-injury employment resulted in an average weekly wage which was greater than before the injury, his hourly wage was less than it had been before the injury. Furthermore, the subsequent employment was weather-dependent, and no work was performed during periods of inclement weather.

In a two-to-one decision, the Workers' Compensation Board (Board) affirmed the decision of the ALJ. The majority emphasized that income benefits are paid as a percentage of average weekly wage and that the difference between the pre- and post-injury average weekly wage most closely approximates the extent of a worker's actual financial loss due to the injury. The dissenting opinion indicated a belief that the application of KRS 342.730(1)(b) unfairly penalized the claimant for returning to work after his injury, particularly since he was no longer working at a wage equal to or greater than his pre-injury wage.

The Court of Appeals noted that because the legislature had provided a statutory definition of the term "wage," it was not permitted to consider the common use of the word in construing KRS 342.730(1)(b). The court stated:

> If the Legislature intended for the average weekly wage to be used in calculations under KRS 342.730, it was perfectly capable of specifying average weekly wage. However, the Legislature used the word "wage", and under KRS 342.0011(17) we hold that the Legislature intended calculations to be based on the wage rate fixed by the employer, be it by piece, hourly, weekly, or monthly.

The Court of Appeals concluded that because claimant was paid by the hour rather than by the week, his actual hourly rate should have been used by the ALJ in determining whether to apply KRS 342.730(1)(b); therefore, the decision of the Board was reversed. These appeals by the employer and the Special Fund followed.

It is undisputed that claimant's unemployment at the time of the hearing was due to a subsequent injury which was sustained in the subsequent employment. For that reason, it is not material to determining the compensation to which he is entitled for the claim which is presently under consideration. See *Fleming v. Windchy,* Ky., 953 S.W.2d 604 (1997).

KRS 342.730(1)(b) provides, in pertinent part, as follows:

> For permanent, partial disability, where an employee returns to work at a wage equal to or greater than the employee's preinjury wage, sixty-six and two-thirds percent (66–2/3%) of the employee's average weekly wage but not more than seventy-five percent (75%) of the state average weekly wage as determined by KRS 342.740, multiplied by his percentage of impairment caused by the injury or occupational disease as determined by "Guides to the Evaluation of Permanent Impairment," American Medical Association, latest edition available, unless the employee establishes a greater percentage of disability as determined under KRS 342.0011(11), in which event the benefits shall not exceed two (2) times the functional impairment rate, . . . .

KRS 342.0011(17) defines the term "wages" as:

> "Wages" means, in addition to money payments for services rendered, the reasonable value of board, rent, housing, lodging, fuel, or similar advantages received from the employer, and gratuities received in the course of employment from others than the employer as evidenced by the employee's federal and state tax returns.

■ We will begin our discussion by making several observations. First, it is apparent that income benefits pursuant to all sections of KRS 342.730 are calculated as a percentage of the worker's average weekly wage. Second, it is apparent that the legislature used only the term "wage" in the first clause of KRS 342.730(1)(b) and used the term "average weekly wage" in the second clause. What is not immediately apparent is the significance of its doing so. Just as the term "average weekly wage" was not used in the first clause, neither was the term "wage rate." When considered in its entirety, the statutory definition of the term "wages" appears to do no more than to specify the inclusion of items of remuneration which are reportable as income for state and federal tax purposes. It does little to clarify the legislature's intent with regard to the question at issue. We conclude, therefore, that the term "wage," as used in KRS 342.730(1)(b), could have been intended to refer either to a worker's pay rate (i.e., "wage rate") or to the worker's income from the employment. Our task is to discern the legislative intent.

KRS 342.140 employs a number of formulae for the computation of average weekly wage. It also employs virtually the same definition of "wages" as that contained in KRS 342.0011(17). See KRS 342.140(6). When compared with KRS 342.140(1)(a), (b), and (c), which address payment by the week, month, or year, it is apparent that KRS 342.140(1)(d) anticipates that the earnings of workers paid by the day, the hour, or output may vary from week to week. Where a worker is paid by the day, hour, or output, average weekly wage is to be determined in a manner most favorable to the worker but does not include overtime or premium pay. KRS 342.140(1)(d). This provision has been applied in such a manner that payment for those hours worked in excess of forty are calculated at the base pay rate and included in the employee's average weekly wage. *Durr v. Chapman,* Ky.App., 563 S.W.2d 743 (1978).

Although claimant was paid by the hour both before and after the injury, KRS 342.140(1)(e) was utilized rather than KRS 342.140(1)(d) because he did not work a full 13 weeks after the injury. KRS 342.140(e) projects the worker's earnings as though he had worked for a full 13–week period. As recognized by the Board, the formulae contained in KRS 342.140 reflect a legislative policy of attempting to indemnify a worker based upon the amount of income which is lost as a result of workplace injury. This policy works to the benefit of those injured workers who are paid by the day, hour, or output by maximizing the average weekly wage upon which their income benefits are calculated. Those who work extra hours, who exceed base output requirements, or who receive other forms of income in their employment may include the resulting "wages" in their average weekly wage and receive a higher income benefit as a result.

■ Here, claimant asserts that, although his income was greater after the injury, he

was required by his new employer to work more hours at a lower hourly rate. He, therefore, urges this Court to construe KRS 342.730(1)(b) as requiring a comparison of the injured worker's pre- and post-injury pay rate rather than the average weekly wage. We observe, however, that although a comparison of pre- and post-injury pay rates would favor the claimant, it would disfavor a worker who, although able to obtain employment at a higher pay rate, was not able to work full-time or was unable to find full-time employment and, therefore, suffered a decrease in income. We are not persuaded that the legislature was likely to have intended such a result.

It has long been established that the purpose of workers' compensation "income benefits" is to compensate the victims of industrial injury for a loss of income and to provide an ongoing stream of income in order to meet their essential needs and those of their dependents. Workers' compensation legislation does not create a quasi tort or seek to compensate an injured worker for his or her entire loss. Instead, income benefits are awarded on the basis of occupational disability which is equated to a decrease in the injured worker's wage earning capacity, in other words, to how much less money the worker could command in the labor market. KRS 342.0011(11); *Osborne v. Johnson,* Ky., 432 S.W.2d 800, 803 (1968). Here, claimant suffered a decrease in his wage earning capacity which was reflected in a lower post-injury pay rate. It was for that reason that he was entitled to receive an award of income benefits despite the fact that he earned a greater income from work after his injury.

The apparent goal of amending KRS 342.730(1)(b) in 1994 was to limit the amount of income benefits paid to a worker who sustains an occupational disability which, although greater than the worker's physical functional impairment, does not cause a decrease in the amount of income he is able to earn from work. Since the formulae for average weekly wage which are contained in KRS 342.140 more accurately measure a worker's actual income from a particular employment than the worker's pay rate, we conclude that for the purposes of KRS 342.730(1)(b); it is the injured worker's pre- and post-injury average weekly wages which should be compared.

The decision of the Court of Appeals is hereby reversed, and the decision of the ALJ is reinstated.

All concur.