Sarah **PENDYGRAFT**, Appellant,

v.

**FORD MOTOR COMPANY, Hon. James L. Kerr, Administrative Law Judge and Workers' Compensation Board, Appellees.**

No. 2007–SC–000658–WC.

Supreme Court of Kentucky.

Aug. 21, 2008.

Christopher P. Evensen, Cotton & Evensen, PLLC, Louisville, KY, Counsel for Appellant.

Wesley G. Gatlin, Elizabeth M. Hahn, Boehl, Stopher & Graves, Louisville, KY, Counsel for Appellee.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) included profit-sharing bonuses in the claimant's pre- and post-injury average weekly wage and, on that basis, found her to be ineligible for a double income benefit under KRS 342.730(1)(c)2. The Workers' Compensation Board affirmed. The claimant appeals a decision by the Court of Appeals to reverse and remand with directions to exclude the bonuses.

We affirm but for different reasons. To the extent that an employee works for profit-sharing in lieu of wages, the employee's actual hourly wage is not fixed or cannot be determined. The average weekly wage of such an individual is determined under KRS 342.140(1)(f), based on the usual wage of employees who perform similar work. The evidence compelled a favorable finding under KRS 342.730(1)(c)2 because: the claimant's hourly rate increased; she continued to work full time; and nothing indicated that the average weekly wage of a paid employee performing similar work would have decreased.

The claimant injured her back in October 2001, while working as a tug driver in the defendant-employer's stock department. She underwent surgery in 2002 and 2004 and worked as an inspector on the chassis line when her claim was heard. She submitted lay and medical evidence indicating that she lacked the physical capacity to return to work as a tug driver. She also submitted evidence that compared her pre- and post-injury wages, with profit-sharing bonuses included and not included in the calculation. It indicated that she presently earned less per week if profit-sharing bonuses were included.

Lonnie Corkum, the employer's labor relations representative, testified in May 2006 that the claimant was in the top third of the plant's employees with regard to seniority. He stated that her present hourly wage was $26.73 and that it had been $23.14 at the time of her injury. When asked if it was likely that she would continue to earn the same or greater wage than at the time of injury, he responded that it was "highly likely." Corkum stated that the union contract provided bonuses to all employees based on the company's profits and that the company included them when reporting employees' taxable income. He did not know when the bonuses began or whether the formula for calculating them changed at some point. He stated that the company was not paying profit-sharing bonuses in 2006, explaining that workers received them only when the company made a profit.

Among other things, the parties disputed whether the average weekly wage calculation included the profit-sharing bonuses. The state's average weekly wage applicable to injuries that occurred in 2001 was $530.07. Even without the bonuses, the claimant's average weekly wage at the time of injury was $1,148.39, which entitled her to the maximum par-

tial disability benefit that KRS 342.730(1) permitted. Of concern was whether her post-injury physical capacity and average weekly wage entitled her to an enhanced benefit under both KRS 342.730(1)(c)1 and (1)(c)2. If so, *Fawbush v. Gwinn*, 103 S.W.3d 5 (Ky.2003), would require the ALJ to determine the subsection under which enhancement would be more appropriate.

The claimant argued that she was entitled to a triple benefit under KRS 342.730(1)(c)1. She also argued that profit-sharing bonuses must be included in her pre- and post-injury average weekly wage and, thus, that she was not entitled to a double benefit under KRS 342.730(1)(c)2. If successful, the arguments would preclude a *Fawbush v. Gwinn* analysis and ensure a triple benefit.

The ALJ determined that the claimant retained a 28% permanent impairment rating from the injury. Noting that profit-sharing bonuses were taxable, the ALJ included them in the claimant's average weekly wage and determined that KRS 342.730(1)(c)2 did not apply because her present wage was less than it had been at the time of the injury. The ALJ concluded that KRS 342.730(1)(c)1 entitled her to a triple benefit because she lacked the physical capacity to return to the type of work that she performed at the time of injury.

Since the inception of the Workers' Compensation Act, income benefits have been awarded on the basis of occupational disability. In *Osborne v. Johnson*, 432 S.W.2d 800 (Ky.1968), the Court defined occupational disability, taking into account various factors that result in a loss of wage-earning capacity following an injury. The legislature codified that definition subsequently in KRS 342.0011(11) and enacted KRS 342.730, which authorized income benefits based upon the percentage of occupational disability.

*Whittaker v. Robinson,* 981 S.W.2d 118, 120 (Ky.1998), concerned a claim that arose under the 1994 version of KRS 342.730. At issue was whether the ALJ erred by applying KRS 342.730(1)(b) which, at the time, limited the permissible income benefit of an individual who "return[ed] to work at a wage equal to or greater than the employee's preinjury wage" to no more than two times the permanent impairment rating. Mr. Robinson received a greater average weekly wage than at the time of injury but worked for more hours at a lower pay rate. He argued on that basis that the ALJ should have applied KRS 342.730(1)(c), which did not contain the limitation. The court determined that subsection (1)(b) contemplated a comparison of the pre- and post-injury average weekly wage, explaining that the provisions reflected a legislative policy of compensating a worker based on the income loss that an injury causes and that to focus on the pay rate would disfavor those who earned a higher pay rate but were unable to work sufficient hours to achieve the pre-injury average weekly wage.

The legislature revised the Act extensively in 1996. Among other things, it amended KRS 342.0011(11); enacted KRS 342.0011(34), (35), and (36); and amended KRS 342.730(1)(b) and (c). As a consequence, a finding of permanent partial disability required both a permanent disability rating and an ability to work. A table found in KRS 342.730(1)(b) listed a factor for each of eight ranges of permanent impairment ratings. The factor increased as the corresponding range of impairment ratings increased, which favored workers with higher permanent impairment ratings because the product of the permanent impairment rating and corresponding factor

equaled the disability rating and determined the amount of the income benefit. KRS 342.730(1)(c)1 provided a 50% increase in the benefit of a worker who did not retain the physical capacity to return to the previous type of work, and KRS 342.730(1)(c)2 provided a 50% reduction in the benefit of a worker who returned to work "at a weekly wage equal to or greater than the average weekly wage at the time of injury." Thus, the benefit of an individual who retained the physical capacity to return to the previous type of work but failed to do so was calculated under KRS 342.730(1)(b) but was neither enhanced nor reduced. The court determined in *Ball v. Big Elk Creek Coal Co.*, 25 S.W.3d 115 (Ky.2000), that KRS 342.730(1)(c)2 did not require a carrier to determine the worker's entitlement to the 50% enhancement each week but noted that KRS 342.125(3) permitted reopening at any time to conform an award to KRS 342.730(1)(c)2.

The legislature adopted the present method for compensating partially disabled workers in 2000. The 2000 amendments decreased the factors contained in KRS 342.730(1)(b), thereby decreasing the basic income benefit. The amended version of KRS 342.730(1)(c)1 provides a triple income benefit for workers who do not retain the physical capacity to return to the previous type of work, and KRS 342.730(1)(c)3 provides additional multipliers based on age and education. KRS 342.730(1)(c)2 states as follows:

> If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with

or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection. This provision shall not be construed so as to extend the duration of payments.

KRS 342.730(1)(c)2 provides a financial incentive for partially disabled workers to return to the most remunerative work that they are able to perform. It entitles an individual who returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury to receive the basic income benefit while working but to receive a double benefit if the employment ceases for any reason. It requires the ALJ to compare the worker's pre- and post-injury average weekly wage.

Eligibility for workers' compensation benefits derives from an individual's status as an employee. KRS 342.140 provides various formulae for calculating an employee's average weekly wage. *Whittaker v. Robinson, supra* at 120, notes that the formulae "reflect a legislative policy of attempting to indemnify a worker based upon the amount of income [that] is lost as a result of workplace injury." KRS 342.140(6), which is substantially the same as KRS 342.0011(17), states as follows:

> The term "wages" as used in this section and KRS 342.143 means, in addition to money payments for services rendered, the reasonable value of board, rent, housing, lodging, and fuel or similar advantage received from the employer, and gratuities received in the course of employment from others than the employer to the extent the gratuities are reported for income tax purposes.

The claimant asserts that her profit-sharing bonuses were wages because they were "money payments for services ren-

dered" and were included in her taxable income. Although she relies on Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law*, §§ 93.01(2) (2007), which indicates that most jurisdictions include bonuses in the average weekly wage calculation, she fails to consider a subsequent statement that profits from a business generally are not considered to be wages.

We acknowledge that workers sometimes receive profit-sharing in lieu of wages but are not convinced that KRS 342.140(6) requires such payments to be included in the average weekly wage calculation. To the extent that an employee works in exchange for profit-sharing, the employee's actual hourly wage is not fixed or cannot be determined. KRS 342.140(1)(f) bases such an individual's average weekly wage on the usual wage for similar services when rendered by a paid employee, a basis that is independent of a particular employer's profits and that is consistent with the purposes of KRS 342.730(1)(b) and (1)(c)2. In *Marsh v. Mercer Transportation*, 77 S.W.3d 592 (Ky.2002), he court determined that the average weekly wage of an employee who drove a truck that she and her husband owned must be determined as that of a non-owner employee under KRS 342.140(1)(f) rather than based on her share of the profit reported for income tax purposes.

The claimant received hourly wages for her work, but a union contract required her employer to pay a profit-sharing bonus during periods that the company made a profit. Her hourly rate increased after the injury. She continued to work full time, and no evidence indicated that the average weekly wage of a paid employee performing similar work would have decreased. Thus, the evidence compelled a finding that she received a wage equal to or greater than her average weekly wage at the time of injury.

The decision of the Court of Appeals is affirmed.

MINTON, C.J., and ABRAMSON, CUNNINGHAM, NOBLE, SCHRODER, and SCOTT, JJ., concur. VENTERS, J., not sitting.