RENDERED: JULY 9, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0033-WC

LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT                                                      APPELLANT


PETITION FOR REVIEW OF A DECISION
v.           OF THE WORKERS' COMPENSATION BOARD
ACTION NO. 2019-WC-0042


MICHAEL GOSPER; HONORABLE
JONATHAN WEATHERBY,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD                         APPELLEES


OPINION
AFFIRMING

** ** ** ** **


BEFORE: JONES, MAZE, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE: The Lexington-Fayette Urban County Government

(hereinafter LFUCG) appeals from an opinion and order of the Workers'

Compensation Board (hereinafter referred to as Board) which affirmed an opinion

and order of an administrative law judge (hereinafter ALJ). Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

Michael Gosper began his employment with LFUCG in 2001 as a firefighter and EMT. The only injury he sustained during his employment prior to the current claim was a meniscus tear in 2007. That injury was treated and caused no further problems. Mr. Gosper filed the underlying workers' compensation claim alleging he suffered cumulative trauma to his bilateral knees based on the effects of his employment. Mr. Gosper indicated that the date of injury was December 13, 2017. Mr. Gosper testified that he had been feeling pain in his knees for some time, but felt that December 13, 2017, was the day he could no longer perform his duties. Mr. Gosper's pain was caused by arthritis.

Mr. Gosper underwent a total right knee replacement in July of 2018, and a total left knee replacement in August of 2018. He completed physical therapy in December of 2018. His treating physician, Dr. John Balthrop advised him to look into another line of work because he could no longer perform firefighter type activities with his knee replacements. Mr. Gosper testified that he is relatively pain free in both of his knees and does not take any medication for his knees.

Four doctors submitted reports as part of the underlying workers' compensation claim: Dr. Timothy Scott Prince, Dr. J. Rick Lyon, Dr. Frank Burke, and Dr. Balthrop. Drs. Balthrop and Prince were also deposed. Dr. Prince believed that Mr. Gosper's disability was not due primarily to his occupation, but rather to an underlying varus deformity.[1] Dr. Prince did believe that Mr. Gosper's disability was likely aggravated by his employment and that both knees were affected by the employment. Dr. Prince gave Mr. Gosper a 12% whole person impairment rating attributable to his occupation. Dr. Lyon's report indicated that Mr. Gosper's underlying arthritis was not work related, but that the employment likely worsened the condition. Dr. Lyon also believed only Mr. Gosper's right knee injury was work related. Dr. Lyon attributed an 8% whole person impairment rating to Mr. Gosper's employment. Dr. Burke's report indicated that the nature and duration of Mr. Gosper's work contributed to the development of arthritis and believed both knees were affected by Mr. Gosper's employment. Dr. Burke assessed a 36% whole person impairment rating to Mr. Gosper based on occupational injury. Dr. Balthrop believed Mr. Gosper's underlying arthritis was not caused by his employment, but that it was worsened by it. Dr. Balthrop did not give Mr. Gosper an impairment rating because, as he testified, that was not a usual part of his medical practice. Drs. Prince, Lyon, and Burke all discussed the AMA

---

[1] Also known as bow-leggedness.

-3-

*Guides* in their reports and discussed Table 17-35 of the *Guides*. That table details how to determine an impairment rating based on knee replacement results. Dr. Lyon's report went into a little more detail discussing Table 17-35 than the reports of Drs. Prince and Burke.

After reviewing the evidence and hearing the testimony of Mr. Gosper, the ALJ held that Mr. Gosper's cumulative injury was attributable to his employment. The ALJ found that the strenuous activity performed by Mr. Gosper during his 19 years of employment worsened his arthritis and his employment accelerated degenerative changes in excess of what would otherwise be expected. The ALJ found Dr. Burke's impairment rating to be most persuasive and adopted the 36% whole person impairment rating. The ALJ also held that Mr. Gosper was unable to return to his previous employment or similar type of work. The ALJ awarded Mr. Gosper permanent partial disability benefits. The Board affirmed the holdings of the ALJ and this appeal followed.

## ANALYSIS

"The function of further review of the [Board] in the Court of Appeals is to correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

> [Kentucky Revised Statutes (KRS)] 342.285 designates the ALJ as the finder of fact. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418 (Ky. 1985), explains that the fact-finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986), explains that a finding that favors the party with the burden of proof may not be disturbed if it is supported by substantial evidence and, therefore, is reasonable.

*AK Steel Corp. v. Adkins*, 253 S.W.3d 59, 64 (Ky. 2008). "Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B. F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky. 1971). "Although a party may note evidence which would have supported a conclusion contrary to the ALJ's decision, such evidence is not an adequate basis for reversal on appeal." *Whittaker v. Rowland*, 998 S.W.2d 479, 482 (Ky. 1999) (citation omitted).

LFUCG's first argument on appeal is that the ALJ erred in finding that there was a consensus among Drs. Balthrop, Burke, and Prince regarding the causation of Mr. Gosper's injury. LFUCG points out that Drs. Balthrop and Prince believed Mr. Gosper's injury was not primarily caused by work related activities, but underlying arthritic conditions, like the varus deformity. We find no error in the ALJ's finding.

The ALJ found that there was a consensus among Drs. Balthrop, Burke, and Prince regarding causation. The ALJ first cited the case of *Haycraft v.*

-5-

*Corhart Refractories Co.*, 544 S.W.2d 222 (Ky. 1976). That case holds that "if it be found . . . that the nature and duration of the work probably aggravated a degenerative . . . condition to the degree that it culminated in an active physical impairment sooner than would have been the case had the work been less strenuous," then it is compensable under workers' compensation. *Id.* at 225. Stated another way, "although a particular affliction is of common occurrence among the population in general, it may nevertheless be found work-connected, hence compensable, when the nature of the victim's occupation has increased the victim's susceptibility to it." *Id.* at 224. The ALJ then went on to describe the findings of Drs. Balthrop, Burke, and Prince and found that "[t]hese credible objective medical opinions have convinced the ALJ . . . that the nature and duration of [Mr. Gosper's] work . . . aggravated a degenerative condition into an active physical impairment sooner than would have been the case had the work been less strenuous."

After reviewing the medical opinions of the doctors, we agree with the ALJ. All three doctors found that Mr. Gosper's injury was exacerbated by his employment. This is the causation consensus described by the ALJ. Seeing as *Haycraft* allows for a work injury to be caused by cumulative trauma exacerbating an underlying condition, we find no error with the finding of the ALJ.

LFUCG's next argument on appeal is that the ALJ erred in relying on Dr. Burke's 36% whole person impairment rating.[2] LFUCG argues that one of the lower impairment ratings should have been utilized because Mr. Gosper's surgeries were completely successful. We believe that the ALJ did not err in finding Dr. Burke's impairment rating to be the most persuasive.

"[T]he proper interpretation of the *Guides* and the proper assessment of an impairment rating are medical questions[,]" *Kentucky River Enterprises, Inc. v. Elkins*, 107 S.W.3d 206, 210 (Ky. 2003), and "an ALJ must decide the legal significance of conflicting medical evidence." *Tokico (USA), Inc. v. Kelly*, 281 S.W.3d 771, 775 (Ky. 2009). Here, the ALJ did not err in relying on Dr. Burke's impairment rating. While Mr. Gosper testified that his knee surgeries went perfectly and he was pain free, it is also without question that he could not handle physically demanding activities like he previously could. In addition, the ALJ could not rely on Dr. Balthrop's impairment rating because he did not set one forth. Furthermore, Drs. Prince and Lyon believed Mr. Gosper's injuries were more likely caused by an underlying varus deformity as opposed to employment related activities. Dr. Burke mentioned the varus deformity in his report, but

---

[2] More specifically, Dr. Burke stated that, based on Table 17-35 of the *Guides*, Mr. Gosper had a score of 76 points for the right knee and 71 points for the left knee. Those points indicated a fair result for the total knee replacements. It also equated to a 20% impairment rating for each knee, which equaled a 36% whole person impairment rating.

focused more on the strenuous activities Mr. Gosper performed as part of his work. Finally, Dr. Lyon believed only Mr. Gosper's right knee had a work-related injury, whereas Dr. Burke believed both knee injuries were work related.

Even though Mr. Gosper's knees were relatively pain free and he had excellent range of motion, the ALJ's reliance on Dr. Burke's higher impairment rating was not unreasonable. Dr. Burke believed both knees were affected by Mr. Gosper's employment and he described how he arrived at his impairment rating. The ALJ weighed the conflicting evidence and came to a reasonable conclusion based on substantial evidence.

LFUCG's third and final argument on appeal is that the ALJ erred in relying on Dr. Burke's impairment rating because he did not go into much detail regarding his use of Table 17-35. Table 17-35 has a numerical score for different aspects of a knee replacement, such as pain and range of motion. Those numerical values are then totaled and turned into an impairment rating. LFUCG argues that Dr. Burke's impairment rating should be ignored because he did not sufficiently set forth the numerical values he relied on. We disagree.

Dr. Burke's report stated Mr. Gosper had a score of 76 points for the right knee and 71 points for the left knee. These were both based on the relevant table. Those points then equated to a 20% impairment rating for each knee, which was then converted to a 36% whole person impairment rating. While Dr. Burke

-8-

could have set forth each numerical score which allowed him to arrive at 76 points and 71 points, LFUCG cites to no case law which requires such a specific finding. In his report, Dr. Burke detailed his examination of Mr. Gosper. He also described Mr. Gosper's pain levels, his ability to do certain movements, and his range of motion. This is sufficient to support his impairment rating.

## <u>CONCLUSION</u>

Based on the foregoing, we affirm the judgment of the ALJ and Board. Neither the Board nor the ALJ overlooked relevant precedent. Further, the ALJ's opinion weighed the conflicting evidence and his ultimate conclusion was based on substantial evidence.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE MICHAEL GOSPER: |
|---|---|
| Lori V. Daniel<br>Lexington, Kentucky | Donald R. Todd<br>Lexington, Kentucky |