RENDERED: SEPTEMBER 22, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0604-WC

LABORATORY CORP OF AMERICA                  APPELLANT

|  | PETITION FOR REVIEW OF A DECISION |
|---|---|
| v. | OF THE WORKERS' COMPENSATION BOARD |
|  | ACTION NO. WC-21-95319 |

HUNTER SMITH; HONORABLE JOHN MCCRACKEN,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD                                               APPELLEES

AND                          NO. 2023-CA-0720-WC

HUNTER SMITH                           CROSS-APPELLANT

|  | CROSS-PETITION FOR REVIEW OF A DECISION |
|---|---|
| v. | OF THE WORKERS' COMPENSATION BOARD |
|  | ACTION NO. WC-21-95319 |

LABORATORY CORP OF AMERICA;
HONORABLE JOHN MCCRACKEN,
ADMINISTRATIVE LAW JUDGE;

AND WORKERS' COMPENSATION
BOARD                                                    CROSS-APPELLEES

<u>OPINION</u>
<u>AFFIRMING</u>

\*\* \*\* \*\* \*\* \*\*

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND JONES, JUDGES.

JONES, JUDGE:  On October 17, 2022, an Administrative Law Judge ("ALJ")
entered a final order directing Laboratory Corp of America ("Labcorp") to pay
Hunter Smith ("Smith") permanent partial disability ("PPD") benefits for
psychological and lower back injuries Smith sustained.  Labcorp subsequently
appealed to the Workers' Compensation Board ("Board"), arguing the ALJ
improperly adjudicated Smith's psychological injury by relying upon a conditional
psychological impairment rating in ascertaining whether Smith achieved maximum
medical improvement ("MMI").  Smith cross-appealed, arguing the ALJ
improperly adjudicated the whole person impairment ("WPI") rating applicable to
the post-injury condition of his low back.  The Board affirmed.  Labcorp and Smith
now respectively appeal and cross-appeal to this Court, reasserting the same
arguments they raised before the Board.  Upon review, we likewise affirm.

Before proceeding to our discussion and analysis of these appeals, we
note that the function of further review of the Board by this Court is to correct the
Board only where we perceive that it "has overlooked or misconstrued controlling

-2-

statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). "Our standard of review in workers' compensation claims differs depending on whether we are reviewing questions of law or questions of fact." *Miller v. Tema Isenmann, Inc.*, 542 S.W.3d 265, 270 (Ky. 2018). We review *de novo* a decision of the Board or ALJ regarding proper interpretation of the law or its application of facts. *Id.* (citation omitted). However, with regard to factual findings, "[t]he ALJ as fact finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence." *LKLP CAC Inc. v. Fleming*, 520 S.W.3d 382, 386 (Ky. 2017) (citation omitted).

## I. Labcorp's Appeal: 2023-CA-0604-WC

The factual and procedural history relevant to Labcorp's appeal is as follows. Smith was employed by Labcorp as a phlebotomist. His last date of work for Labcorp was January 27, 2021, when a shelving unit fell onto his head, knocked him to the ground, and landed on his back. Smith later filed an action for workers' compensation benefits against Labcorp, asserting among other claims that his January 27, 2021 work incident caused him psychological injury. In support, he produced medical records from Dr. Robert Sivley, a clinical psychologist who performed an Independent Medical Examination ("IME") of his mental state on January 5, 2022. Included in these records was Dr. Sivley's initial report detailing

his assessment of Smith's mental condition where, in pertinent part, Dr. Sivley stated:

> This individual has a ratable psychological impairment resulting from his January, 2021, workplace injury. However, he may not be at maximum medical improvement, due to the fact that he has had no mental health treatment to address these issues, and antidepressant medication combined with psychotherapy may well help him to adjust better and feel better regarding his relatively new physical limitations. Based on his current symptomatology it is the opinion of the undersigned that he qualifies for an impairment rating in Class II-Mild Impairment (American Medical Association Guides to the Evaluation of Permanent Impairment, Fifth Edition; Chapter 14-Mental and Behavioral Disorders; Table 14-1; Page 363). The second edition of the guides assign percentages of impairment in the 10 to 20 percent range for Class II. The undersigned is reluctant to offer a percentage of the whole person impairment, due to this individual having not received mental health treatment services which may improve his psychiatric status.

To reiterate, Dr. Sivley believed that treatment could improve Smith's psychological condition, and Smith's lack of treatment caused him to stop short of declaring Smith to be at MMI and thus assigning Smith a whole person impairment rating for it. However, in a February 14, 2022 addendum to his report, he amended his opinion as follows:

> This addendum is to clarify the issue of maximal medication [sic] improvement with regard to Mr. Smith's workplace injury. In my report of that evaluation I indicated that Mr. Smith would have a Class II Impairment Rating of 10 to 20 percent under the second

edition of the AMA Guides. I did not set forth a specific impairment rating at that time in the hope that Mr. Smith would be able to improve with mental health treatment. However, if Mr. Smith is not able to receive mental health treatment, because the Workers' Compensation Carrier does not pay for that treatment, or he is not able to obtain it from other sources, it would be my opinion that Mr. Smith is at maximal medical improvement with regard to his psychological condition and that the psychological impairment rating as a result of [sic] January 27th, 2021, work related injury would be 20% of the whole body under the second edition of the AMA Guides. If this individual is able to participate in psychotherapy, he is not yet ratable, due to not being at maximal medication [sic] improvement[.]

Owing to his deficient finances and Labcorp's unwillingness to otherwise pay for it, Smith never received treatment for his alleged psychological injury prior to when the ALJ rendered his final award. This, in turn, leads to the sole issue in Labcorp's appeal. The ALJ ultimately determined that the January 27, 2021 incident did cause Smith a compensable psychological injury; and, considering Smith's lack of treatment and the dearth of evidence demonstrating Smith's condition had since improved, the ALJ awarded Smith benefits consistent with Dr. Sivley's 20% WPI rating. Labcorp has maintained, however, that the ALJ was precluded from considering Dr. Sivley's 20% WPI rating because it was conditional and thus, in Labcorp's view, did not qualify as the kind of substantial evidence required to justify an award.

The Board rejected Labcorp's argument, as do we. Indeed, our Supreme Court rejected roughly the same argument nearly ten years ago in *Martin County Coal Co. v. Goble*, 449 S.W.3d 362 (Ky. 2014):

> The sole issue on appeal is whether there was substantial evidence to support the ALJ's finding that Goble has a permanent psychological impairment rating. Martin County argues that there was no such evidence for three interrelated reasons: . . . (3) Dr. Johnson stated he could not assess a permanent impairment rating because Goble's condition could improve with treatment, which Goble did not receive. . . .
>
> . . .
>
> As to the third argument, a permanent impairment rating is "the percentage of whole body impairment caused by the injury or occupational disease as determined by the 'Guides to the Evaluation of Permanent Impairment'" (the *Guides*). KRS 342.0011(35). As noted by Martin County, the *Guides* defines "permanent impairment" as "[a]n impairment that has reached maximal medical improvement." *Id*. at 602. The *Guides* defines "maximal medical improvement" as "[a] condition or state that is well stabilized and unlikely to change substantially in the next year, with or without medical treatment. Over time, there may be some change; however, further recovery or deterioration is not anticipated." *Id*. at 601.
>
> It is true that Dr. Johnson stated he could not estimate what Goble's permanent impairment was at the time of his evaluation and that any impairment should improve with physical and psychological treatment. However, he also stated that any improvement in Goble's psychological condition was dependent, in part, on a reduction of pain and an increase in functional activities. Goble testified his pain had not improved significantly;

-6-

his functional abilities had not increased significantly; and he had not gotten any psychological/psychiatric treatment. Therefore, the ALJ could reasonably infer that Goble's psychological condition had stabilized and that Goble had reached maximum medical improvement.

Furthermore, the *Guides* states "[a] patient may decline surgical, pharmacologic, or therapeutic treatment of an impairment. If a patient declines therapy for a permanent impairment, that decision neither decreases nor increases the estimated percentage of the individual's impairment." The *Guides* at 20. Thus, contrary to Martin County's argument, Goble's failure to seek psychological/psychiatric treatment did not bar Dr. Johnson from assigning a permanent impairment rating. As noted above, the ALJ was free to infer that Goble had reached maximum medical improvement, and he was also free to infer that Dr. Johnson's estimated impairment rating was permanent. Thus, the ALJ's adoption of Dr. Johnson's estimated impairment rating was supported by evidence of substance, and we cannot disturb it on appeal.

*Id*. at 366-67 (internal footnote omitted).

There is no meaningful difference between Dr. Sivley's conditional impairment rating in this case and Dr. Johnson's estimated impairment rating in *Goble*; and *Goble* is binding precedent that such a conditional impairment rating can, under the circumstances, qualify as substantial evidence supportive of an award of benefits. Labcorp's sole appellate argument accordingly lacks merit and provides no basis for reversing the decision of the Board.

## II. Smith's Cross-Appeal:  2023-CA-0720-WC

Smith also asserted a claim for benefits against Labcorp based upon an injury to his lower back he allegedly sustained as a result of the January 27, 2021 work incident.  His claim was successful, but not to the extent he had hoped.  His total award of PPD benefits encompassed what the ALJ ultimately determined was a resulting 5% WPI to his low back, but Smith argues on cross-appeal that the ALJ's determination was improper, and that his impairment rating should have been higher.  We disagree.

For context, Smith's argument involves two conflicting expert opinions about the post-injury condition of his low back – one from Dr. Jules Barefoot, and the other from Dr. Michael Best.  The Board aptly summarized this evidence as follows:

> Dr. Barefoot evaluated Smith on November 10, 2021 at the request of Smith's counsel.  He reviewed Smith's history of left L4-L5 hemilaminectomy, medical facetectomy, diskectomy, and foraminotomy.  He noted Smith's last day of work with Labcorp was in January 2021 and he has not worked since that date.  Dr. Barefoot diagnosed a January 27, 2021 work injury to the lumbar spine.  He noted the April 5, 2021 lumbar spine surgery and reviewed the February 10, 2021 and September 7, 2021 lumbar MRI reports.  He assessed a 24% whole person impairment rating but found a 5% impairment for pre-existing back condition to the lumbar spine.  Thus, Dr. Barefoot opined Smith has a 19% impairment rating related to the January 27, 2021 work injury.  Dr. Barefoot recommended pain management and that Smith be allowed to sit and rest intermittently.  He stated Smith

would have difficulty with prolonged standing, walking, climbing and descending stairs.

Dr. Barefoot provided a supplemental report on September 10, 2022 after reviewing Dr. Best's medical report. He disagreed with Dr. Best's statement that Smith's condition was not work-related. He also took issue with Dr. Best's reference to Smith's back pain two days before the work incident as the record indicated Smith had no pain that day and rated his pain level at zero.

. . .

Dr. Best evaluated Smith and reviewed medical records on June 17, 2022 at Labcorp's request. Dr. Best diagnosed a herniated L4-L5 disc, left, status post left hemilaminotomy, medial facetectomy, discectomy and foraminotomy on April 5, 2021. He stated Smith displayed significant magnification of symptoms and believes Smith's prognosis was poor due to marked overreaction. He believed Smith's low back condition occurred prior to the January 27, 2021 work incident. Dr. Best referred to a January 25, 2021 physical therapy visit specifically emphasizing that back pain began on or about five years previously. Regarding causation, Dr. Best again emphasized that Smith was complaining of back pain two days before the work event when he went to physical therapy. Dr. Best found Smith had an active medical condition before January 27, 2021. He placed Smith at MMI in September 2021. Dr. Best found Smith met the criteria for a Lumbar DRE Category III 10% impairment based on a pre-existing active medical condition and not a work-related injury. Dr. Best disagreed with Dr. Barefoot's assessment of a 5% impairment for a prior active condition as he believed the entire rating was due to a prior active condition.

In determining Smith sustained an injury to his low back from the January 27, 2021 work incident, the ALJ relied on Dr. Barefoot in resolving causation. He accepted Dr. Best's 10% impairment rating utilizing the lumbar diagnosis-related estimate ("DRE") Category III. He did not use Dr. Barefoot's 24% impairment rating based on the range-of-motion ("ROM") method but utilized Dr. Barefoot's assessment of 5% impairment for pre-existing condition, which Dr. Barefoot had based on the lumbar DRE Category II. Consequently, the ALJ determined the work incident had caused Smith a 5% net whole person impairment attributable to his low back.

We now proceed to the specifics of Smith's argument. Smith faults the ALJ for borrowing from both Dr. Barefoot's and Dr. Best's opinions to arrive at an ultimate impairment rating because these experts (1) utilized different methodologies to arrive at their respective ratings, and (2) disagreed regarding the work-relatedness of his low back condition. With that said, both of these points were addressed, and we believe properly resolved, by the Board in its analysis. We quote and adopt the Board's opinion as follows:

> First, Smith contends the impairment rating found by the ALJ did not conform to the AMA Guides. He contends the ROM method utilized by Dr. Barefoot was the correct method for determining his lumbar impairment. In his view, even though Smith had only one back surgery, implicating the DRE method, the fact that he had acknowledged prior back complaints mandated the use of the ROM method. Smith cites to the

-10-

criteria for use of the ROM method, particularly the paragraph based on recurrent radiculopathy or recurrent injury in the same spinal region. AMA Guides at 379-380. While Smith had periodic injections over the preceding years, it was disputed whether he was symptomatic when he went to a physical therapist on January 25, 2021, a couple days before the injury.

In Kentucky River Enterprises, Inc., v. Elkins, 107 S.W.3d 206 (Ky. 2003), the Kentucky Supreme Court held the proper interpretation of the AMA Guides is a medical question solely within the province of the medical experts. Where opinions from medical experts conflict regarding the appropriate percentage, it is the ALJ's function, as fact-finder, to weigh the evidence and select the rating upon which permanent disability benefits, if any, will be awarded. Knott County Nursing Home v. Wallen, 74 S.W.3d 706 (Ky. 2002).

In George Humfleet Mobile Homes v. Christman, 125 S.W.3d 288 (Ky. 2004), the Supreme Court further held that, while an ALJ is not authorized to independently interpret the AMA Guides, as fact-finder, he may consult them in the process of assigning weight and credibility to evidence. Although assigning a permanent impairment rating is a matter for medical experts, determining the weight and character of medical testimony and drawing reasonable inferences therefrom are matters for the ALJ. Wallen, supra. The ALJ is not required to engage in a detailed analysis under the AMA Guides, nor is he required to engage in a detailed explanation of the minutia of his reasoning in reaching a particular result. Shields v. Pittsburgh and Midway Coal Mining Co., 634 S.W.2d 440 (Ky. App. 1982); Big Sandy Community Action Program v. Chaffins, 502 S.W.2d 526 (Ky. 1973).

Here, we have conflicting medical opinions, from which the ALJ has full authority to pick and choose. The ALJ accepted Dr. Best's 10% impairment rating for the

-11-

post-surgery condition, which he obtained utilizing the DRE method, Category III, and Dr. Barefoot's 5% impairment rating attributable to the pre-existing active condition, also based on the DRE method, Category II. The ALJ rejected the 24% AMA rating assigned by Dr. Barefoot based on the ROM method. The AMA Guides specifically state the DRE method is the principal methodology used to evaluate an individual who has a distinct injury. AMA Guides, Sec. 15.2, p. 379. Further, regarding apportionment, the AMA Guides state, "Ideally, use the same method to compare the individual's prior and present condition." Id. at 381. While there are various criteria for using the ROM method, it is the ALJ's prerogative to rely on the medical opinions and pick and choose what to rely upon.

Smith contends Dr. Best's opinion on causation was based on erroneous information, whether Smith complained of pain at the physical therapy visit. Smith states the pre-existing active complaints were fully acknowledged by both Dr. Lanford and Dr. Barefoot when they opined the work injury necessitated the need for surgery. There was a dispute as to what was stated at the physical therapy visit a few days before the injury. As to whether Smith complained of back pain on that date, his testimony indicated he did not. Regardless, it was for the ALJ to parse through the evidence and pick and choose what evidence to rely upon. *See* Copar, Inc. v. Rogers, 127 S.W.3d 554, 561 (Ky. 2003); Pruitt v. Bugg Brothers, 547 S.W.2d 123 (Ky. 1977).

The ALJ did not rely on Dr. Barefoot's 24% impairment rating based on the ROM method but accepted his rating for pre-existing active impairment. The ALJ accepted Dr. Best's post-surgery impairment rating but rejected his opinion that this rating was due solely to a pre-existing condition. Smith contends that since Dr. Best did not believe he suffered a work-related injury, he cannot assign an impairment rating for his back condition. Smith supports this argument by stating a

doctor who opines there is no work injury cannot assign a MMI date for that work injury. The two issues are distinguishable. The MMI date for recovery from a work injury is based on an opinion that there was a work injury. The assigning of an impairment rating analyzes the condition of the individual, and whether the rating relates to conditions pre-injury or caused by the injury is a separate matter. It is for the ALJ, and not this Board, to make this finding when analyzing conflicting evidence regarding causation and the degree of a pre-existing active condition. "The proper interpretation of the Guides and the proper assessment of an impairment rating are medical questions." Plumley v. Kroger, Inc., 557 S.W.3d 905, 913 (Ky. 2018). It is also the ALJ's sole authority as fact-finder to judge the weight, credibility, substance, and inferences to be drawn from the evidence. AK Steel Corp. v. Adkins, 253 S.W.3d 59 (Ky. 2008).

The current appeal is not one where the impairment ratings assigned are not grounded upon the AMA Guides, such as utilizing the wrong edition or adding separate impairment ratings when the Guides expressly state this is not to be done. *See* George Humfleet Mobile Homes v. Christman, supra. The two physicians expressed conflicting opinions regarding causation and the proper method to be utilized in assessing an impairment rating. It was for the ALJ to choose whom to believe. The case law cited above supports the ALJ in accepting portions of each physician's opinion while rejecting other parts of their opinion. The ALJ's lumbar impairment rating was supported by substantial evidence.

We agree with the Board's reasoning set forth above. Accordingly,

Smith has put forth no basis for reversing the Board's decision.

-13-

## III. CONCLUSION

Because the Board has not overlooked or misconstrued controlling statutes or precedent, or otherwise committed an error in assessing the evidence so flagrant as to cause gross injustice, we affirm with respect to both Labcorp's appeal and Smith's cross-appeal. *See Kelly*, 827 S.W.2d at 687-88.

ALL CONCUR.

| BRIEFS FOR APPELLANT/CROSS-APPELLEE LABORATORY CORP OF AMERICA: | BRIEF FOR APPELLEE/CROSS-APPELLANT HUNTER SMITH: |
|---|---|
| | Jeffery A. Roberts |
| Jeremy N. Faulk | Murray, Kentucky |
| Louisville, Kentucky | |