RENDERED: AUGUST 22, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0479-WC

LABORATORY CORP OF AMERICA                               APPELLANT


V.
ON APPEAL FROM COURT OF APPEALS
NO. 2023-CA-0604
WORKERS' COMPENSATION NO. WC-21-95319


HUNTER SMITH; JOHN MCCRACKEN,                            APPELLEES
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

AND


2023-SC-0484-WC

HUNTER SMITH                                        CROSS-APPELLANT


V.
ON APPEAL FROM COURT OF APPEALS
NO. 2023-CA-0604
WORKERS' COMPENSATION NO. WC-21-95319


LABORATORY CORP OF AMERICA                          CROSS-APPELLEE

AND

JOHN MCCRACKEN,                                          APPELLEES
ADMINISTRATIVE LAW JUDGE AND
WORKERS' COMPENSATION BOARD


**OPINION OF THE COURT BY JUSTICE NICKELL**

**<u>AFFIRMING</u>**

Laboratory Corp of America ("Labcorp") has appealed from the decision of the Court of Appeals which affirmed a decision of the Workers' Compensation Board ("Board") affirming an Administrative Law Judge's ("ALJ") Opinion and Order awarding Hunter Smith permanent partial disability ("PPD") benefits for a work-related back injury with psychological overlay. Labcorp asserts the Court of Appeals and the Board erred by affirming the ALJ's adjudication of Smith's psychological injury which it contends was improperly based on a conditional impairment rating. Smith has cross-appealed, alleging the ALJ improperly adjudicated the permanent impairment rating relative to his back injury. Following a careful review, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Smith was employed by Labcorp as a phlebotomist. The events precipitating this workers' compensation claim occurred on January 27, 2021, when a shelving unit fell onto Smith's head, knocking him to the ground. He sustained acute injuries to his lower back which required surgical intervention. On April 4, 2021, Dr. Gregory Lanford performed a Left L4-5 hemilaminectomy, medial facetectomy, diskectomy, and foraminotomy. The surgery was not successful at alleviating Smith's symptoms, with Dr. Lanford noting during follow-up visits that Smith had burning pains in his legs exacerbated by standing and walking, mechanical back pain, urinary urgency, urinary leakage, back stiffness, and inability to sleep. Dr. Lanford ultimately assessed a 24% permanent impairment rating relative to the back injury, apportioning 5% to pre-existing injuries and 19% to the work-related injury. He recommended

2

Smith not engage in prolonged standing or walking, refrain from repetitive climbing of stairs, and never work from ladders, scaffolds, or unprotected heights. Dr. Lanford indicated Smith would need to sit and rest periodically for relief of his pain.

Dr. Jules Barefoot examined Smith on November 10, 2021. At that time, Smith had complaints of lower back pain radiating to his thigh, numbness in his leg, and burning pain in his calf, all worsened with walking. Dr. Barefoot also noted urinary urgency and dribbling and difficulty sleeping due to back and leg pain. Smith freely admitted to experiencing prior back issues but Dr. Barefoot indicated no surgery or restrictions had been recommended prior to the work injury. Although some of Smith's prior medical records noted active back pain, others did not, including a physical therapy report issued two days prior to the work injury. Dr. Barefoot's recommended restrictions mirrored those given by Dr. Lanford. Additionally, utilizing the ROM[1] method Dr. Barefoot agreed with Dr. Lanford that Smith's permanent impairment rating was 24%, with 19% attributable to the work injury and 5% to pre-existing active impairment.

Dr. Michael Best performed a medical examination and records review on behalf of Labcorp. Dr. Best disagreed with the other physicians, noting Smith was uncooperative, confrontational, and displayed significant magnification of his symptoms. Dr. Best opined all of Smith's back issues were pre-existing

---

[1] Range-of-motion.

before the workplace incident, relying on information contained in the physical therapy note issued two days prior to the shelf collapse. He further believed Dr. Barefoot had ignored the appropriate method of assessing an impairment, instead finding Smith has a Lumbar DRE[2] Category III 10% impairment, all of which he attributed to a pre-existing active condition.

Dr. Barefoot subsequently reviewed Dr. Best's report and opined Dr. Best had misread Smith's physical therapy note to say Smith had active back pain two days before the workplace incident when, in fact, Smith had reported no pain or tenderness and exhibited normal movements. Dr. Barefoot stood firm in his previous impairment assessment and was unswayed by Dr. Best's opinions. Dr. Barefoot noted his belief the ROM method was indicated as the appropriate assessment tool, but did not challenge Dr. Best's use of the DRE method as medically inappropriate or improper.

Dr. Robert Sivley evaluated Smith's psychological complaints and issued a report on January 5, 2022. Prior to the work injury, Smith had participated in one or two counseling sessions during his mid-20's for relationship issues, but otherwise had no psychiatric history. Following a battery of psychological tests, Dr. Sivley diagnosed Smith with adjustment disorder with mixed anxiety and depressed mood, moderate to severe. Although Dr. Sivley diagnosed a Class II impairment range, he refrained from providing a percentage of impairment because he was unsure if Smith had attained maximum medical

---

[2] Diagnosis-related estimate.

4

improvement ("MMI") as he had not received any treatment for his mental health issues. Several weeks later, Dr. Sivley provided an addendum to his report assessing a 20% impairment rating for Smith's psychological condition upon concluding Smith had reached MMI as he was unable to obtain payment from Labcorp for mental health treatment.

Dr. Amy Trivette performed a medical evaluation of Smith on behalf of Labcorp on June 6, 2022. Because she is not a psychologist and cannot administer psychological tests, Dr. Trivette engaged Dr. Martine Turns to conduct the examination and testing. In reviewing the results, Dr. Trivette concluded Smith was genuine in some responses but in others showed a degree of symptom exaggeration and over-reporting of symptoms which were not fully accounted for by his medical records. She believed the inconsistencies made reliance on Smith's accounts of his condition suspect. Dr. Trivette found Smith did not demonstrate significant psychiatric impairment resulting from the work injury nor did he suffer a mental disorder which would prevent performance of his work duties. Thus, upon concluding Smith did not have a psychological impairment relative to his work injury, Dr. Trivette assessed him a 0% impairment rating.

After considering all of the evidence, the ALJ issued an opinion, award, and order on July 15, 2022. The ALJ determined Smith had carried his burden of establishing a compensable work-related injury. The ALJ awarded Smith medical expenses and permanent partial disability benefits. For the back injury, the ALJ rejected Dr. Best's determination that all of Smith's

5

symptoms resulted from a pre-existing condition, but nevertheless accepted his 10% impairment assessment as the most appropriate. Agreeing with a portion of Dr. Barefoot's assessment, the ALJ determined 5% of Smith's impairment was attributable to a pre-existing active condition, thus leaving a 5% impairment rating for the work-related back injury. The ALJ also concluded Smith suffered work-related psychological impairment, and awarded benefits based upon the 20% impairment rating assessed by Dr. Sivley.

Labcorp appealed to the Board, asserting the ALJ improperly relied on Dr. Sivley's impairment rating because Smith had not attained MMI at the time the rating was assigned. It contended only Dr. Trivette's findings constituted reliable and substantial evidence of Smith's psychological impairment. Smith cross-appealed, arguing the ALJ improperly admitted Dr. Best's report into evidence and further misapplied the AMA *Guides*[3] when determining whether to use the impairment rating of Dr. Barefoot or Dr. Best as the two used differing methods of ascertaining the extent of Smith's back injury. The Board affirmed. Both parties appealed to the Court of Appeals, reasserting the same arguments presented to the Board. The Court of Appeals affirmed. This appeal and cross-appeal followed.

**STANDARD OF REVIEW**

Review from an ALJ's decision on a workers' compensation claim proceeds on three levels. *Lexington Fayette Urb. Cnty Gov't v. Gosper*, 671

---

[3] American Medical Association *Guides to the Evaluation of Permanent Impairment*, Fifth Edition.

S.W.3d 184, 199 (Ky. 2023). "The Board performs the first level of review[,]" as set forth in KRS 342.285, and functions essentially to correct error, "though without the power of constitutional review." *Id.* The Court of Appeals performs the second level of review from the decisions of the Board pursuant to KRS 342.290 with the purpose of correcting the Board only where "the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id.* (quoting *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992)). Further review by this Court is available "as a matter of right under Section 115 of the Kentucky Constitution[,]" and is meant to address "new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Id.* at 200 (quoting *W. Baptist*, 827 S.W.2d at 688). Thus, we "will not simply 'third guess' the decisions of the Board and the Court of Appeals upon the same evidence." *Id.*

In determining disputed issues of fact, "the ALJ as 'the finder of fact . . . has the authority to determine the quality, character and substance of the evidence presented.'" *Id.* at 198 (quoting *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985)). Additionally, "an ALJ has sole discretion to decide whom and what to believe, and may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof." *Id.* (quoting *Bowerman v. Black Equip. Co.*, 297 S.W.3d 858, 866 (Ky. App. 2009)). On

7

appellate review, "the standard of review is whether the [factual] finding was 'clearly erroneous,' meaning 'unreasonable under the evidence presented.'" *Id.* at 199 (quoting *Letcher Cnty. Bd. of Educ. v. Hall*, 576 S.W.3d 123, 126 (Ky. 2019)). However, we review "questions of law and the application of law to facts under the de novo standard." *Id.*

## ANALYSIS

Labcorp contends the ALJ's reliance on Dr. Sivley's impairment rating for Smith's psychological injury was misplaced and the Board and Court of Appeals erred in affirming such reliance based on Labcorp's belief the rating was conditional and therefore could not constitute substantial evidence justifying an award of benefits. Dr. Sivley opined Smith might not be at MMI because he had not yet undergone any mental health treatment. In the absence of such treatment, however, Dr. Sivley indicated Smith was at MMI and assessed an impairment rating. Labcorp argues Dr. Sivley's reports contain internal inconsistencies and, because he did not believe Smith was at MMI, he was prohibited by the *Guides* from assigning any impairment rating whatsoever.[4] Labcorp asserts the ALJ should have concluded Smith did not

---

[4] Contrary to Rules of Appellate Procedure (RAP) 41, Labcorp cites numerous unpublished opinions of the Court of Appeals in support of its position when there are published opinions of this Court addressing the point of law being argued (*see* RAP 41(A)(3)) and without clearly stating the opinions are not binding authority (*see* RAP 41(A)(4)). In one instance, Labcorp even cites to an opinion of the Court of Appeals which was subsequently appealed to this Court, and we issued an opinion, thereby rendering the decision of the Court of Appeals non-final, non-binding, completely without precedential value, and otherwise wholly improper for citation. Because of the clear violation of RAP 41, we shall ignore any citations to those opinions, and any related arguments, in our review. Counsel is cautioned to refrain from such infractions in the future.

carry his burden of showing a psychological impairment or, alternatively, should have relied on the 0% impairment rating assessed by its expert, Dr. Trivette.

On cross-appeal, Smith argues the ALJ misread and misapplied the *Guides* relative to when a physician should use the ROM method instead of the DRE method for assessing an impairment rating. He further contends the ALJ erred in utilizing portions of the opinion of Dr. Best to determine an impairment rating for his back injury. Smith claims that because Dr. Best did not believe Smith suffered a work-related injury, he could not offer any opinion regarding an impairment rating, and the ALJ was thus precluded from relying on his report.

The arguments presented by both parties to this Court are identical to those raised and rejected below. No new or novel questions of law are presented, no precedents warrant reconsideration,[5] and no constitutional issues are in play. Rather, at bottom, each party simply insists the ALJ chose the wrong expert opinion in reaching its decision on an impairment rating. Both cite the rule that a physician's opinion pertaining to an impairment rating must be based on the AMA *Guides*, *Jones v. Brasch-Barry Gen. Contractors*, 189 S.W.3d 149, 153 (Ky. App. 2006), and contend the opinions of their

---

[5] We note Labcorp asks us to overrule *Martin County Coal Co. v. Goble*, 449 S.W.3d 362 (Ky. 2014), as an outlier in workers' compensation jurisprudence. However, the issue in *Goble* with which it disagrees is consistent with other published authority, including *Tokico (USA), Inc. v. Kelly*, 281 S.W.3d 771 (Ky. 2009), and *Miller v. Go Hire Employment Development, Inc.*, 473 S.W.3d 621 (Ky. App. 2015). We discern no reason to reconsider *Goble* at this juncture.

9

opponent's expert physician were reached in violation of the rule. However, for an impairment rating to be properly based on, or "*grounded* in the *Guides* is not to require a *strict adherence* to the *Guides*, but rather a *general conformity* with them." *Plumley v. Kroger, Inc.*, 557 S.W.3d 905, 912 (Ky. 2018). Moreover, we have long recognized "[t]he proper interpretation of the *Guides* and the proper assessment of an impairment rating are medical questions." *Id.* at 913 (quoting *Kentucky River Enters., Inc. v. Elkins*, 107 S.W.3d 206 (Ky. 2003)). Ultimately, "this Court's only prerogative is to evaluate the ALJ's decision to ensure that it is not contrary to the evidence." *Id.*

Both Labcorp and Smith set forth their views of the evidence as supportive of their respective positions. However, contrary to their assertions, both Dr. Sivley and Dr. Best issued reports *grounded* in and conforming to the *Guides* in reaching their conclusions.

Dr. Sivley's contingent finding of MMI was premised on Smith not receiving mental health treatment—for which Labcorp refused, and Smith was unable, to pay. Such provisional MMI opinions have been held to be consistent with the *Guides* and can serve as substantial evidence justifying an award of benefits. *See Tokico (USA), Inc.*, 281 S.W.3d at 775-776 ("The need for additional treatment does not preclude a finding that a worker is at MMI."); *Go Hire*, 473 S.W.3d 633 (holding an ALJ can reasonably infer from contingent impairment ratings that claimant is at MMI where physician knows no treatment has been provided, none will be forthcoming, and condition will be static absent treatment).

10

Dr. Best utilized the DRE method which is the principal methodology used to evaluate a claimant with a distinct injury. *Guides*, Sec. 15.2, p. 379. Although the ROM method may also be used under certain criteria, no medical evidence was presented indicating Dr. Best's use of the DRE method was medically improper or in violation of the *Guides*. Importantly, Dr. Barefoot's review of Dr. Best's report did not directly question his methodology, but merely disagreed with his ultimate conclusions. Additionally, although Dr. Best did not believe it was work related, he clearly acknowledged Smith had a disabling low back injury for which an impairment rating was appropriate. As noted by the Board, "assigning of an impairment rating analyzes the condition of the individual, and whether the rating relates to conditions pre-injury or caused by the injury is a separate matter."

While both parties seek a different outcome based upon their assessment of the evidence, it is axiomatic that

> [a]lthough a party may note evidence which would have supported a conclusion contrary to the ALJ's decision, such evidence is not an adequate basis for reversal on appeal. *McCloud v. Beth–Elkhorn Corp.,* Ky., 514 S.W.2d 46 (1974). The crux of the inquiry on appeal is whether the finding which was made is so unreasonable under the evidence that it must be viewed as erroneous as a matter of law. *Special Fund v. Francis,* [708 S.W.2d 641, 643 (Ky. 1986)].

*Ira A. Watson Dept. Store v. Hamilton,* 34 S.W.3d 48, 52 (Ky. 2000). Here, the ALJ weighed the conflicting medical testimony, determined the quality, character, and substance of the evidence, and assessed what it believed to be an appropriate impairment rating. "An ALJ may draw reasonable inferences

11

from the evidence, reject any testimony, and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof." *Go Hire*, 473 S.W.3d at 629.

The ALJ's decision, which was affirmed by the Board and the Court of Appeals, may not have been the only possible outcome, but it is not unplausible. The parties have offered nothing new to this Court which has not already been analyzed by the lower tribunals. Thus, "[t]he present appeal fails to reach beyond the threshold for routine affirmance." *W. Baptist*, 827 S.W.2d at 688. Our review of the record does not convince us that the evidence compelled a different result. The ALJ's decision was supported by substantial evidence, was not clearly erroneous, and therefore should not be disturbed. Additionally, "the fact remains that the Workers' Compensation Board and the Court of Appeals have provided adequate appellate review, and the view they took of the evidence is neither patently unreasonable nor flagrantly implausible. The case before us does not merit further appellate oversight." *Id.*

## CONCLUSION

For the foregoing reasons, the decision of the Court of Appeals is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT/CROSS-APPELLEE:

James B. Cooper
Boehl Stopher & Graves, LLP


COUNSEL FOR APPELLEE/CROSS-APPELLANT:

Jeffery A. Roberts


ADMINISTRATIVE LAW JUDGE:

Hon. John McCracken


WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey
Chairman